## APPEAL OF SAMUEL BIRD.

Docket No. 6721. Submitted March 28, 1926. Decided June 28, 1926.

1. Cost of Imperial Russian Government Fifth War Loan bonds allowed as a deduction in 1920 as a debt ascertained by the taxpayer to be worthless and charged off in that year.

2. Indebtedness evidenced by a bond may be ascertained to be worthless prior to the maturity date of the bond.

*George S. Brengle, Esq.*, for the petitioner.
*F. O. Graves, Esq.*, for the Commissioner.

Before PHILLIPS and TRAMMELL.

Taxpayer appeals from the determination of a deficiency of $12,-696.66 for the year 1920, and alleges as error the refusal of the Commissioner to permit the deduction of $20,370, claimed as a debt ascertained to be worthless and charged off by the taxpayer during the taxable year.

### FINDINGS OF FACT.

The taxpayer is and at all material times was a citizen and resident of the United States, and during the years involved was engaged in the business of writing marine insurance risks, including insurance on shipments to Russian ports.

On or about August 11, 1916, the taxpayer bought for cash, as an investment, certain 5½ per cent bonds of the Imperial Russian Government, known as the Fifth Russian War Loan, of the par value of 100,000 rubles. Said bonds were dated February 14, 1916, matured February 14, 1926, were internal bonds and were payable, principal and interest, in rubles in Russia. The taxpayer paid for them the sum of $29,100, or $291 per thousand ruble bond.

In the year 1917 the taxpayer sold 30,000 rubles par value of said bonds for $3,000, or $100 per 1,000 rubles.

The Imperial Russian Government was overthrown in March, 1917, and was succeeded by the Provisional or Kerensky Government. The Provisional or Kerensky Government was overthrown by the Soviet Government in November, 1917.

The Soviet Government, by a decree issued in January, 1918, repudiated the bond issues and certain other financial obligations of the Imperial Russian Government, including the bonds of the issue held by the taxpayer.

The Soviet Government, on the overthrow of the Provisional Government, did not immediately become either the *de jure* or the *de facto* Government of Russia, being in January, 1918, in control of

only a relatively small part of Russian territory. Counter-revolutionary movements had developed throughout Russia and Siberia, the leaders of these movements, among others, being Admiral Kolchak, Generals Denniken, Wrangel, Yudenitch, and Korniloff. Several of these leaders recognized the validity of the bonds issued by the Imperial Russian Government. The Allied Powers gave aid to these counter-revolutionary efforts and in June, 1919, Admiral Kolchak was recognized by the Supreme Council in Paris as the *de facto* ruler of all Russia. The counter-revolutionary movements were not overcome by the Soviets until the defeat of General Wrangel in November, 1920, and it was not until the year 1920 that it became certain the Soviets were to be in a position to enforce and make good their decree repudiating the debts of the Imperial Russian Government, including the bonds of the issue held by the taxpayer.

The Soviet repudiative decree has not been rejected, rescinded or modified. No interest has been paid on such bonds since 1917.

In October or November, 1920, the taxpayer endeavored in good faith, but without success, to sell the remaining bonds (70,000 rubles par value), through two legitimate brokerage and investment houses in New York City, with which the taxpayer dealt. The taxpayer could find no market for said bonds.

The taxpayer, during the years 1916 to 1920, inclusive, knew generally of conditions in Russia and of the action of the Soviet Government in repudiating the debts of the Imperial Russian Government. In the latter part of 1920 the taxpayer ascertained the said bonds, which he then held, and the debt of the Imperial Russian Government evidenced by such bonds, to be worthless.

In December, 1920, the taxpayer charged off the said Russian bonds (70,000 rubles, par value), as bad debts and thereafter, in his Federal income-tax return for the calendar year 1920, deducted as a debt ascertained to be worthless the actual purchase price of said bonds, to wit, $20,370.

In computing the deficiency here involved, the Commissioner has refused to allow any part of the deduction claimed by the taxpayer.

OPINION.

PHILLIPS: The facts presented in this case are substantially similar to those in *Appeal of The Murchison National Bank,* 1 B. T. A. 617. The sole distinguishing feature is that in that appeal the bonds which evidenced the indebtedness matured in 1919, while here they mature in 1926. While this might be a material distinction in those cases where a deduction is sought, not on the ground that the indebtedness is uncollectible and worthless, but as a loss on the ground

that, although collection can be made, the monetary unit in which payment is to be made has become practically worthless (and on this point we express no opinion at the present time), it does not appear that the distinction is material in this case.

Here the government issuing the bonds had been succeeded by a *de facto* regime which had expressly repudiated the indebtedness, refused to pay any interest thereon, and was in a position to enforce its repudiation. There were no steps which could be taken to enforce the indebtedness, and it seems that the indebtedness was as worthless in 1920 as it is at the present time. The deduction claimed must be allowed.

> *Order of redetermination will be entered on*
> *15 days' notice, under Rule 50.*